## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 16 2018, 7:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Louis Joyce, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 16, 2018

Court of Appeals Case No.
82A05-1706-CR-1348

Appeal from the Vanderburgh
Circuit Court

The Honorable Michael Cox,
Magistrate

Trial Court Cause No.
82C01-1702-F6-1038

**Barnes, Judge.**

# Case Summary

Robert Joyce, Jr., appeals his conviction for Level 6 felony battery by bodily waste. We affirm.

# Issue

The sole issue before us is whether the prosecutor committed misconduct by commenting upon Joyce's failure to testify at trial.

# Facts

On February 20, 2017, Evansville Police Officer Matthew Taylor arrested Joyce for disorderly conduct and resisting law enforcement. Officer Taylor put Joyce in the back seat of his police cruiser to transport him to jail. The cruiser did not have any kind of barrier between the front and back seats. Officer Taylor was wearing a body cam. A couple of minutes into the drive to jail, Officer Taylor attempted to speak with Joyce. Joyce, who was intoxicated and agitated, yelled that he did not want to talk. The body cam also recorded Joyce saying something along the lines of, "b****, I'll spit in your mouth," although it is difficult to discern precisely what Joyce said because his speech was highly slurred. Ex. 1, 2:16-2:20. Shortly thereafter, Officer Taylor pulled over in a parking lot and accused Joyce of spitting on him. Joyce denied doing so. Officer Taylor removed Joyce from his cruiser and radioed in a request for a van or a cruiser with a cage to continue transporting Joyce to jail. Officer Taylor told backup officers who were at the scene that Joyce had spit on his face and asked them to retrieve napkins for him from inside his cruiser.

[4] The State charged Joyce with Level 6 felony battery by bodily waste on a police officer, Class A misdemeanor resisting law enforcement, Class B misdemeanor disorderly conduct, and alleged that he was an habitual offender. Joyce pled guilty to the resisting law enforcement and disorderly conduct charges but demanded a jury trial on the battery charge. At trial, Officer Taylor testified that Joyce spat on him, and the State played the body cam video. Because of the position of the body cam in relation to Joyce, it was not possible to see him spitting on Officer Taylor.

[5] Joyce elected not to testify at trial. During closing argument, the prosecutor stated in part:

> One of the reasons I'm asking you to believe Officer Taylor is because if you look at another instruction later on that the Court read to you, one of the, and we talked about this a little bit in voir dire, whenever you have two people that are telling you different stories, the defendant is saying, hey I didn't spit on him, Officer Taylor is saying, hey he did, you look at the reasonableness of the testimony considering the other evidence. We talked about that in voir dire right, you might look to some third party or surveillance video I think is what the example that I had used. In this case we've got the surveillance video so to speak, it's the bodycam footage that you saw, and that correlates with Officer Taylor's testimony, it does not correlate with the defendant's testimony. In effect, ladies and gentlemen, to find the defendant not guilty in this case you basically have to call out Officer Taylor and you have to say that Officer Taylor is a liar, a cheat, and a fraud, and he is not those things. At the end of the day Officer Taylor testified the defendant spit on him, the video corroborates that.

Tr. Vol. IV pp. 43-44.

[6] Defense counsel did not object to the prosecutor's closing statement. The trial court gave an instruction to the jury stating, "The fact that the defendant did not testify raises no presumption of any kind against the defendant. It shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of the defendant." App. Vol. II p. 59. The jury found Joyce guilty, and he pled guilty to the habitual offender allegation. Joyce now appeals.

## Analysis

[7] Joyce contends the prosecutor improperly commented on his refusal to testify in violation of his Fifth Amendment right against self-incrimination. Because Joyce did not object to the prosecutor's comments, he did not preserve this claim and he must establish that it rose to the level of fundamental error. *See Nichols v. State*, 974 N.E.2d 531, 534-35 (Ind. Ct. App. 2012). When reviewing a claim of prosecutorial misconduct, we must determine whether the prosecutor engaged in misconduct that, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Id.* at 535. "'Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct.'" *Id.* (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)). We measure the weight of the peril by the probable persuasive effect of the misconduct on the jury rather than the degree of impropriety of the conduct. *Id.*

[8] To establish fundamental error based on prosecutorial misconduct, the defendant must also show that the misconduct made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process, presenting an undeniable and substantial potential for harm. *Id.* Harm is established not by a conviction, but rather upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of the truth. *Id.* Misconduct or errors implicating constitutional issues do not necessarily establish that fundamental error has occurred. *Id.*

[9] "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996). A defendant bears the burden of proving that a prosecutor's statement penalized the exercise of his or her right to remain silent. *Id.* at 736. A prosecutor's subjective motivation in making a comment about a defendant's silence is irrelevant. *Id.* at 738. "It is the effect of a remark, not the intent of its speaker, that frustrates a defendant's exercise of the right to remain silent at trial." *Id.* An improper comment on a defendant's silence may be either direct or indirect. *Id.*

[10] In this case, it seems clear that the prosecutor's reference to Joyce's non-existent "testimony" was inadvertent and indirect. Earlier in the argument, the prosecutor had referred to the defendant's "story" about the charged incident.

This did not implicate or refer to Joyce's failure to testify, as opposed to Joyce denying on the body cam recording and at trial—albeit through his attorney and not by testifying—that he spit on Officer Taylor. The prosecutor then discussed Officer Taylor's testimony and reasons why the jury should believe him. In the midst of this discussion, the prosecutor said, "In this case we've got the surveillance video so to speak, it's the bodycam footage that you saw, and that correlates with Officer Taylor's testimony, it does not correlate with the defendant's testimony." Tr. Vol. IV p. 33.

[11]    Even if it was technically erroneous to refer to "the defendant's testimony," we cannot say this rose to the level of fundamental error. In context, this apparent slip of the tongue by the prosecutor was part of a broader argument refuting Joyce's suggestion that Officer Taylor's testimony was untrue. The prosecutor did not ask the jury to draw an inference of guilt from Joyce's silence or suggest that the jurors should do so. Rather, the prosecutor asked the jury to reject Joyce's defense, to examine the corroboration between the body cam video and Officer Taylor's testimony, and ultimately to accept that testimony as true and convict Joyce. Additionally, the trial court instructed the jury not to consider Joyce's failure to testify in any way. The prosecutor's argument, to which Joyce did not object, did not make a fair trial impossible or constitute a blatant violation of elementary due process principles and, thus, is not grounds for reversing Joyce's conviction. *See Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001) (holding prosecutor's argument asking jury to accept victim's testimony and noting "[t]here has been absolutely no conflicting testimony in this trial"

was not a fundamentally-erroneous comment on the defendant's failure to testify).

## Conclusion

[12] The prosecutor's indirect reference to Joyce's failure to testify was not fundamentally erroneous. We affirm his conviction for Level 6 felony battery by bodily waste.

[13] Affirmed.

Najam, J., and Mathias, J., concur.